1

2                                                          FILED IN THE
                                                           U.S. DISTRICT COURT
                                                           EASTERN DISTRICT OF WASHINGTON

3                                                          Jun 02, 2021

4                                                          SEAN F. MCAVOY, CLERK

5                    UNITED STATES DISTRICT COURT

6                  EASTERN DISTRICT OF WASHINGTON

7    LONNIE TOFSRUD, an individual,
                                              NO:  2:19-CV-371-RMP
8                          Plaintiff,
            v.                                ORDER GRANTING IN PART
9                                             DEFENDANTS' MOTION FOR
     SPOKANE POLICE DEPARTMENT,               SUMMARY JUDGMENT
10   a political division of City of Spokane;
     CRAIG MEIDL, in his personal and
11   official capacity; JUSTIN
     LUNDGREN, in his personal and
12   official capacity; and DAVE STABEN,
     in his personal and official capacity,
13
                           Defendants.
14

15        BEFORE THE COURT is Defendants' Motion for Summary Judgment, ECF

16   No. 32.  The Court heard oral argument via video conferencing.  Plaintiff Lonnie

17   Tofsrud was represented by Jeffry K. Finer and Emerson Lenon.  Thomas W.

18   McLane appeared on behalf of Defendants Spokane Police Department, Craig

19   Meidl, Justin Lundgren, and Dave Staben.  The Court has considered the motion, the

20   record, heard oral argument, and is fully informed.

21

     ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
     JUDGMENT ~ 1

1

**STATEMENT OF FACTS**

2

Plaintiff Lonnie Tofsrud is employed by the Spokane Police Department

3

("SPD") as a detective and was assigned to the Targeted Crimes Unit ("TCU").

4

ECF No. 14 at 4.  The TCU has had a longstanding working relationship with the

5

Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF").  ECF Nos. 14 at 4,

6

15 at 4.  In 2016, Tofsrud and ATF Special Agent Adam Julius began utilizing a

7

specific confidential informant to facilitate criminal investigations related to the

8

trafficking of firearms and narcotics.  ECF Nos. 14 at 5–6, 15 at 4.

9

On November 6, 2017, Spokane Police Department officers Corporal

10

McCullough and Sergeant Vigessa arrested the confidential informant utilized by

11

Tofsrud and Special Agent Julius.  ECF Nos. 14 at 6, 15 at 5.  Corporal McCullough

12

is assigned to the Patrol Anti-Crime Team ("PACT").  ECF No. 34-2 at 3.  Sergeant

13

Vigessa contacted Tofsrud and made him aware of the arrest.  ECF Nos. 14 at 6, 15

14

at 5.  Tofsrud reviewed the written arrest report and accompanying documents and

15

noticed alleged discrepancies between the official report and the notes Corporal

16

McCullough had entered in the Computer Aided Dispatch ("CAD") unit history.

17

ECF No. 14 at 6–7.  On December 27, 2017, Tofsrud called Corporal McCullough to

18

discuss the issue.  ECF Nos. 14 at 7, 15 at 5.

19

On December 28, 2017, Tofsrud contacted Spokane County Deputy

20

Prosecutor Eugene Cruz and discussed the discrepancies in Corporal McCullough's

21

report.  ECF No. 34-1 at 4.  The Prosecutor's Office dismissed the case against the

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 2

confidential informant.  ECF Nos. 14 at 7, 15 at 5, 41-1.  Chief Criminal Prosecutor, Jack Driscoll, contacted Lieutenant Stevens regarding possible misconduct by Corporal McCullough.  ECF No. 15 at 5, 34-5 at 3.

Lieutenant Stevens contacted Lieutenant Staben, who was Corporal McCullough's and Tofsrud's superior officer.  ECF Nos. 14 at 8, 15 at 5.  Lieutenant Staben began a shift level internal affairs ("IA") investigation and added Tofsrud to the IA investigation on January 15, 2018.  ECF Nos. 14 at 8–9, 15 at 6.

On January 16, 2018, Lieutenant Staben interviewed Detective James Erickson, who worked with Tofsrud in the TCU.  ECF Nos. 14 at 9, 15 at 6.  During the interview, Detective Erickson stated that Tofsrud had used the word "lie" or "lied" when reporting the discrepancies in Corporal McCullough's report to Deputy Prosecutor Cruz.  ECF Nos. 14 at 9, 33 at 2.  Tofsrud alleges that the statement elicited from Detective Erickson was the product of "deceptive interrogation techniques."  ECF No. 14 at 9.

The investigation was reassigned to Sergeant Carr and Sergeant Waters who handled the bulk of the investigation.  ECF Nos. 14 at 10, 15 at 6.  On March 22, 2018, Sergeant Carr interviewed Tofsrud, and Tofsrud was read his administrative rights.  ECF Nos. 14 at 11, 15 at 7.

Tofsrud contacted the City's Human Resources ("HR") Department with respect to the handling of the IA investigation by Lieutenant Staben.  ECF Nos. 14 at 10, 15 at 7.  On May 4, 2018, Tofsrud filed a discrimination/harassment complaint

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 3

with HR, outlining behavior by Lieutenant Staben.  ECF No. 14 at 14, 15 at 9.

Tofsrud was advised that the HR complaint would not be investigated until after the

IA investigation had been completed.  ECF Nos. 14 at 14, 15 at 9.

On May 25, 2018, an administrative review panel concluded that Tofsrud had

violated several policies including SPD Policy 340.3.5(f): "knowingly making false,

misleading, or malicious statements that are reasonably calculated to harm or destroy

the reputation, authority or official standing of the Department or members thereof."

ECF No. 34-2 at 22, 24.  The administrative review panel found that "Tofsrud was

[not] consistent in his accusations against Cpl. McCullough during the entire

investigation" and "levied many accusations not only against McCullough but also

Sgt. Vigessa and Officer Stephanie Kennedy for various levels of untruthfulness and

called into question their integrity."  ECF No. 34-2 at 22.

On June 22, 2018, Chief Meidl authored a Letter of Reprimand outlining the

policy violations found to have been committed by Tofsrud.  ECF No. 34-4.  ECF

No. 34-4 ("While I did not find that you knowingly made these false allegations, I

find that your actions and statements were reckless.").

On June 24, 2018, Tofsrud submitted a letter of rebuttal addressing the IA

investigation, findings of the administrative review panel, and Letter of Reprimand.

ECF Nos. 14 at 12, 15 at 8.

On September 21, 2018, Spokane Police Guild President John Griffin

submitted a letter to Chief Meidl asking him to reconsider the Letter of Reprimand

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 4

1    that was issued to Tofsrud.  ECF No. 54-9.  President Griffin also met with members

2    of the administrative review panel.  ECF Nos. 14 at 12, 15 at 8.  Chief Meidl

3    declined to reconsider the Letter.  ECF No. 54-10.

4        On August 30, 2018, Plaintiff was served with a potential impeachment

5    disclosure ("PID") letter by Chief Criminal Deputy Prosecutor Mark Cipolla.  ECF

6    Nos. 14 at 13, 15 at 10.  Corporal McCullough also was issued a PID letter.  ECF

7    Nos. 14 at 16, 15 at 10.  The Prosecutor's Office confirmed its decision to maintain

8    Tofsrud on the Potential Impeachment Disclosure List ("PIDL"), colloquially known

9    as the "*Brady* list," in January of 2019.  ECF No. 54-2.

10       On November 20, 2018, a report was submitted regarding Tofsrud's HR

11   complaint.  ECF Nos. 14 at 15, 15 at 9.  Tofsrud claims that the report lacked crucial

12   information and the HR investigation was inadequate.  ECF No. 14 at 15–16.

13       After returning from medical leave, Tofsrud was transferred to the North

14   Precinct where his duties would include screening cases, distributing stickers for the

15   scat program, and conducting background investigations for [prospective] senior

16   volunteers at the precinct.  ECF Nos. 14 at 17, 15 at 10.  Tofsrud was assigned to an

17   office in the reception area of the precinct where Department of Corrections

18   offenders would report to their probation officers.  ECF Nos. 14 at 17, 15 at 10.  The

19   office was previously occupied by a *Brady* officer.  ECF Nos. 14 at 17, 15 at 10.

20   After a discussion with his superiors, it was decided that Tofsrud would share an

21   office with his former partner.  ECF Nos. 14 at 18, 15 at 10.  On August 14, 2019,

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 5

Tofsrud was directed to report to the Academy for training. ECF Nos. 14 at 18, 15 at 11. Tofsrud contends the training had no relative connection to Plaintiff's new assignment. ECF No. 14 at 18. Tofsrud further contends that he was denied other training opportunities, including the opportunity to attend a leadership conference. ECF No. 34-1 at 5–6, 10–11.

Tofsrud was purportedly being "actively recruited" to join the Major Crimes Unit and alleges that he no longer was considered for any of the several open positions after the IA investigation. ECF No. 14 at 5. However, Tofsrud had not formally applied for a position in the Major Crimes Unit. ECF No. 34-1 at 13, 15.

Tofsrud initiated the present matter seeking monetary damages and injunctive relief under 42 USC § 1983 for unlawful retaliation under the First Amendment, violations of due process and equal protection under the Fourteenth Amendment, and state law claims of defamation and outrage. *See* ECF No. 14.

Defendants Spokane Police Department, Craig Meidl, Justin Lundgren, and Dave Staben (collectively "Defendants") seek dismissal of all claims. *See* ECF No. 32.

## LEGAL STANDARD

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Only disputes over facts that might affect the outcome of the suit will

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 6

preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Parties opposing summary judgment must cite to "particular parts of materials in the record" establishing a genuine dispute. Fed. R. Civ. P. 56(c)(1). "[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable or if not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal citations omitted).

**DISCUSSION**

**I.    42 U.S.C. § 1983—First Amendment**

Plaintiff claims that his referral of Corporal McCullough's potential misconduct was protected speech under the First Amendment, and that speech was the sole motivating factor for subsequent retaliatory actions. ECF No. 14 at 22–23. Defendants argue that they are entitled to summary judgment on Tofsrud's retaliation claim under the First Amendment because (1) Tofsrud did not speak as a private citizen, but rather, as a public employee; and (2) Defendants had an

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 7

adequate justification for treating the employee differently from other members of the general public.  ECF No. 32 at 8–10.

"The First Amendment does not protect speech by public employees that is made pursuant to their employment responsibilities—no matter how much a matter of public concern it might be." *Coomes v. Edmonds School Dist. No. 15*, 816 F.3d 1255, 1260 (9th Cir. 2016) (citing *Garcetti v. Ceballos*, 547 U.S. 410, 423–24 (2006)).   In evaluating First Amendment retaliation claims, courts employ the following five-factor inquiry.  *Coomes*, 816 F.3d at 1259.  "First, the plaintiff bears the burden of proof at trial of showing (1) that she spoke on a matter of public concern; (2) that she spoke as a private citizen rather than a public employee; and (3) that the relevant speech was 'a substantial or motivating factor in the adverse employment action.'" *Id.* (quoting *Eng v. Cooley*, 552 F.3d 1062, 1070–71 (9th Cir. 2009)).  "If the plaintiff establishes such a prima facie case, the burden of proof shifts to the government to show that (4) 'the state had an adequate justification for treating the employee differently from other members of the general public'; or (5) 'the state would have taken the adverse employment action even absent the protected speech.'" *Coomes*, 816 F.3d at 1259 (quoting *Eng*, 553 F.3d at 1070–72).

"For the purposes of this argument, the Defendants admit that Plaintiff spoke on a matter of public concern.  However, Defendants do not concede that Plaintiff spoke as a private citizen."  ECF No. 53 at 6.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 8

"[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *See, e.g.*, *Garcetti*, 547 U.S. at 422 (holding that district attorney's memo addressing the proper disposition of a pending criminal case was not protected speech because memo was written pursuant to attorney's official duties as calendar deputy). Speech which "owes its existence to an employee's professional responsibilities" is not protected by the First Amendment. *Id.* at 421.

"[W]hether the plaintiff spoke as a public employee or a private citizen [] is a mixed question of fact and law." *Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1129 (9th Cir. 2008). The proper inquiry to determine the scope of an employee's professional duties is a practical one. *Garcetti*, 547 U.S. at 424.

"[T]he scope and content of a plaintiff's job responsibilities is a question of fact." *Id.* at 1130. The Court must, as a matter of law, decide the "'ultimate constitutional significance' of those facts." *Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 966 (9th Cir. 2011) (quoting *Eng*, 552 F.3d at 1071). "[A]nalyzing whether *Garcetti* applies involves the consideration of factual circumstances surrounding the speech at issue, [but] the question of whether [plaintiff's] speech is entitled to protection is a legal conclusion properly decided at summary judgment." *Charles v. Grief*, 522 F.3d 508, 513 n.17 (5th Cir. 2008) (citation omitted).

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 9

"In evaluating whether a plaintiff spoke as a private citizen, [the court] must therefore assume the truth of the facts as alleged by the plaintiff with respect to employment responsibilities." *Eng*, 552 F.3d at 1071.  With respect to Tofsrud's position as an employee with SPD, Tofsrud testified that although he was not a commander, he held an "informal leadership role . . . within the Targeted Crimes Unit." ECF No. 34-1 at 6.  According to Tofsrud, as part of his normal course of practice and consistent with his training and assignment, he "review[ed] arrest reports and investigation outlines prepared by other units," such as PACT.  ECF No. 42 at 4; *see also* ECF No. 54-3 (City of Spokane job description for Detective position).  He also "worked closely with confidential informants to investigate and prosecute major criminal violations at a high level." ECF No. 40 at 2 (citing ECF No. 42 at 3).  Accordingly, for purposes of resolving this motion, the Court assumes as true that Tofsrud held an informal leadership role within the TCU, and his official duties included reviewing arrest reports and investigations, even those prepared by other units, as well as working closely with confidential informants.

The Ninth Circuit has articulated the following "guiding principles" in determining the scope of a plaintiff's job duties for the purposes of the First Amendment: (1) whether or not the employee confined his communications to his chain of command; (2) the subject-matter of the communication; and (3) whether the employee spoke in direct contravention to his supervisor's orders. *Dahlia v. Rodriguez*, 735 F.3d 1060, 1074–76 (9th Cir. 2013).  "These principles serve as a

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 10

necessary guide to analyzing the fact-intensive inquiry mandated by *Garcetti*." *Id.* at 1076.

"[P]articularly in a highly hierarchical employment setting such as law enforcement, whether or not the employee confined his communications to his chain of command is a relevant, if not necessarily dispositive, factor in determining whether he spoke pursuant to his official duties." *Dahlia*, 735 F.3d at 1074. "When a public employee communicates with individuals or entities outside of his chain of command, it is unlikely that he is speaking pursuant to his duties." *Id.*; *see Freitag v. Ayers*, 468 F.3d 528, 546 (9th Cir. 2006) (holding that correctional officer's communications with a state senator and the inspector general were protected speech, but internal reports were not constitutionally protected).

A basis for the Letter of Reprimand issued to Tofsrud was that "instead of filing a formal complaint through [his] chain of command or directly with Internal Affairs, [Tofsrud] chose to make [his] allegation directly to a prosecuting attorney," thereby he "inappropriately circumvented [his] chain of command." ECF No. 34-4 at 3. The fact that Tofsrud did not confine his communications to his chain of command "is a relevant factor in determining whether he spoke pursuant to his official duties." *Dahlia*, 735 F.3d at 1074. Here, however, it is "not necessarily dispositive." *Id*.

In making a practical, fact-specific inquiry, the Court considers the relationship between the SPD and Spokane County Prosecuting Attorney's Office

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 11

as separate, but coexisting entities.  *See, e.g.*, ECF No. 44 at 3 ("As part of my

assignment I have testified in state and federal courts here in Eastern Washington

on behalf of the prosecution.").  Tofsrud did not communicate with a state senator,

the inspector general, or the public through the press.  *See Freitag*, 468 F.3d at

545–46; *see also Alaska v. EEOC*, 564 F.3d 1062, 1071 (9th Cir. 2009).  Rather,

his communications were with Deputy Prosecutor Cruz.  Although Cruz was

"outside the workplace" in the sense that he is not employed by SPD, he was

intimately related to the matter by virtue of being a prosecutor working on the case

involving Corporal McCullough's arrest of the confidential informant.  ECF No.

34-3 at 4 ("Eugene Cruz issued the first of many different legal 'opinions' on this

particular arrest."); *see also* ECF No. 41-1 at 5 (memo from Deputy Prosecutor

Cruz opining that the case involving the CI should be dismissed).

The subject matter of the communication is also "highly relevant to the

ultimate determination whether the speech is protected by the First Amendment."

*Dahlia*, 735 F.3d at 1074–75.  Whereas a routine report pursuant to normal

departmental procedure about a particular incident or occurrence is typically within

an employee's duties, "broad concerns about corruption or systemic abuse" are less

likely to be reasonably classified as being within the job duties of an average

public employee.  *Id.*

Here, the subject matter of the communication was Corporal McCullough's

stop and arrest of a confidential informant.  Of particular significance is the fact

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 12

that the individual stopped and arrested by Corporal McCullough and Sergeant

Vigessa was a confidential informant utilized by Tofsrud.  ECF Nos. 14 at 6, 15 at

5.  The communication focused on a particular case, as opposed to "broad

concerns" about the PAC Team.  *Dahlia*, 735 F.3d at 1075.  Such concerns seemed

to have arisen only after Tofsrud's meeting with Deputy Prosecutor Cruz.  ECF

No. 42 at 10 (Tofsrud indicating that after meeting with DPA Cruz, he reflected on

similar complaints regarding PACT investigations).  Although Tofsrud states that

he was "aware that past reports of misconduct had not received attention," ECF

No. 42 at 11, Tofsrud's communication with Deputy Prosecutor Cruz, by his own

recollection, was limited to the case involving Corporal McCullough and the

confidential informant.  ECF No. 34-1 at 4 (Tofsrud testifying that he "met with

Mr. Cruz one time to discuss the discrepancies in the report."); *see also* 34-2 at 15

(Tofsrud responding that he "didn't discuss anything in particular with [DPA

Cruz]" regarding PACT).

Finally, where a public employee speaks in direct contravention to his

supervisor's orders, that speech may fall outside the speaker's professional duties.

*Dahlia*, 735 F.3d at 1075.  Tofsrud had a conversation with Sergeant Preuninger

prior to speaking with Deputy Prosecutor Cruz.  ECF No. 34-2 at 18.  According to

Tofsrud, "Sergeant Preuninger endorsed my intention to meet with prosecutor

Cruz, saying 'go talk to him.'"  ECF No. 42 at 8 (citing ECF No. 41-1 at 17).

However, the "Internal Affairs investigation was inconclusive concerning the exact

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 13

content or level of detail [Tofsrud] provided to Sgt. Preuninger regarding this matter."  ECF No. 34-4 at 2.

Although "external communications are ordinarily not made as an employee, but as a citizen," given the factual circumstances underlying the speech at issue, the Court finds that Tofsrud was speaking as an SPD detective i.e. a "public employee."  *Davis v. McKinney*, 518 F.3d 304, 313 (5th Cir. 2008) (citing *Freitag*, 468 F.3d 528); *see also Dahlia*, 735 F.3d at 1089 (O'Scannlain & Kozinski, JJ., concurring) ("[T]he police have a unique role in society that makes it inappropriate to rely on case law involving other types of public employment to decide that officers' speech will be protected when delivered 'to persons outside the work place,' i.e., outside their own police department.").

As set forth by Tofsrud himself in his claim for damages against Spokane County, "Tofsrud's concern was not to implicate McCullough but to ensure prosecutions based on good probable cause and the attempt to salvage his cases which featured the arrestee as a [confidential informant]."  ECF No. 54-2 at 5.  Any "attempt to salvage his cases which featured the arrestee as a CI," *id*., was necessarily undertaken in Tofsrud's role as a public employee, as opposed to as a private citizen.

Although Tofsrud's job duties may not include disclosing concerns to the Prosecutor's Office, Tofsrud's job duties, including working with this specific confidential informant, compelled the disclosure at issue.  In other words, his

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 14

speech "owe[d] its existence" to official responsibilities. *See Garcetti*, 547 U.S. at 421. Accordingly, Tofsrud cannot demonstrate that he spoke to Deputy Prosecutor Cruz as a private citizen. In speaking as a public employee, Tofsrud's speech was not protected. *Id.* at 421–22 ("Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen."). Accordingly, Defendants are entitled to summary judgment on Tofsrud's First Amendment retaliation claim.

## II.    42 U.S.C. § 1983—Fourteenth Amendment

### A. Substantive & Procedural Due Process

Tofsrud asserts both procedural and substantive due process claims against Defendants arising out of the *Brady* listing and subsequent change in job duties, lost overtime, and training opportunities. ECF No. 14 at 18–21. Tofsrud further claims that Defendants "failed to provide adequate notice and opportunity to be heard regarding his [discipline] and his *Brady* listing." *Id*. Additionally, Tofsrud contends that the "investigation against [him] was so flawed that it deprived him of due process." *Id*.

"A threshold requirement to a substantive or procedural due process claim is the plaintiff's showing of a liberty or property interest protected by the Constitution." *Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir. 1994) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972)). Since both substantive and procedural due process claims require the deprivation of a

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 15

constitutionally protected property or liberty interest, the Court assesses first

whether Tofsrud adequately has alleged such an interest.

### 1.    Property Interest

Tofsrud claims that he has "property interest in his job" and Defendants

deprived him of his constitutionally protected interests by "effectively end[ing] his

employability as a police officer."  ECF No. 14 at 19.  Tofsrud further claims that

the *Brady* listing "effectively blacklisted Plaintiff."  *Id.*  Defendants counter that

Plaintiff's substantive due process claim is subject to dismissal on summary

judgment because the Spokane County Prosecuting Attorney's Office, not

Defendants, issue *Brady* letters, and Tofsrud's inclusion on the *Brady* list does not

foreclose him access to his chosen profession.  ECF No. 32 at 10–12.

"The substantive component of the Due Process Clause forbids the

government from depriving a person of life, liberty, or property in such a way that

. . . interferes with rights implicit in the concept of ordered liberty."  *Engquist v.*

*Oregon Dep't of Agric.*, 478 F.3d 985, 996 (9th Cir. 2007).  "[T]here is substantive

due process protection against government employer actions that foreclose access

to a particular profession to the same degree as government regulation."  *Id.* at 998

(dismissing substantive due process claim where there was no evidence that the

defendants caused the plaintiff's job search difficulties).

However, substantive due process claims in the public employment context

are limited to "extreme cases, such as a 'government blacklist,' which when

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 16

circulated or otherwise publicized to prospective employers effectively excludes

the blacklisted individual from his occupation, much as if the government had

yanked the license of an individual in an occupation that requires licensure." *Id*. at

997–98 (citing *Olivieri v. Rodriguez*, 122 F.3d 406, 408 (7th Cir. 1997)).  "Stated

differently, one does not have a constitutional right to a specific job or position, but

only to 'a liberty interest in pursuing an occupation of one's choice.'" *Lane v.*

*Marion County*, No. 6:19-CV-287-MC, 2020 WL 5579820, at *3 (D. Or. Sept. 17,

2020) (quoting *Engquist*, 478 F.3d at 997).

The Court finds that there is insufficient evidence to support the conclusion

that Tofsrud has been "blacklisted" from an occupation in law enforcement, nor

that this case falls into the narrow category of fact patterns identified by the

*Engquist* court.

First, Tofsrud has not been "blacklisted" from an occupation in law

enforcement as his employment with the City of Spokane Police Department

continued after he received the Letter of Reprimand and he was placed on a *Brady*

list.  *See, e.g.*, *Lane*, No. 6:19-CV-287-MC, 2020 WL 5579820, at *3 (holding that

plaintiff's inclusion on the *Brady* list did not violate plaintiff's right to work in his

chosen occupation given that plaintiff was currently employed by the Sherriff's

Office); *see also Boyd v. Edwards*,  No. 6:15–cv–238–MC, 2015 WL 3407890, at

*2 (D. Or. 2015) ("Boyd is still employed as an OSP officer, so he cannot meet the

extremely high bar to make out a substantive due process violation.").

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 17

In response to summary judgment, Plaintiff now contends that "either he continues working under an administration which has already [allegedly] abused him and retaliated against him or resign and face the end of his career." ECF No. 40 at 13. *See Heidt v. City of McMinnville*, No. 3:15-CV-00989-SI, 2016 WL 7007501, at *11 (D. Or. Nov. 29, 2016) (describing "constructive discharge" meaning that an "employee quit because his working conditions were such that a reasonable person would feel he or she had no choice but to quit or retire") (citing *Knappenberger v. City of Phoenix*, 566 F.3d 936, 940 (9th Cir. 2009)). However, Tofsrud remains employed by the City as a detective, and Tofsrud did not assert a theory of "constructive discharge" in his First Amended Complaint. ECF Nos. 14, 40 at 13, 42 at 2.

Second, Tofsrud's conclusory allegation that he is unable to transfer laterally to a different department, ECF No. 14 at 19, is unsubstantiated by the record. Tofsrud does not allege nor does the record support that Tofsrud has attempted to transfer to another police agency and has been unable to do so because of either the Letter of Reprimand or his inclusion on the *Brady* list. *See Lane*, No. 6:19-CV-287-MC, 2020 WL 5579820, at *4 ("Providing evidence of one unsuccessful application with another law enforcement agency falls far short of establishing one is blacklisted from a career in law enforcement."); *see also Tillotson v. Dumanis*, 567 F. App'x 482, 483 (9th Cir. 2014) ("Evidence of four rejections "fall[s] far short of [establishing] a complete prohibition" on Tillotson obtaining employment

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 18

as a police officer.") (quoting *Lowry v. Barnhart*, 329 F.3d 1019, 1023 (9th Cir. 2003)).

Third, Tofsrud's contention that Defendants have effectively "blacklisted" Tofsrud from his law enforcement career and advancement by "labeling him as a liar" mischaracterizes the evidence.  ECF No. 40 at 13.  The Letter of Reprimand issued by SPD Chief Meidl is devoid of the terms "liar" or "lying," but rather states:

> By bringing unsubstantiated allegations of untruthfulness on the part of Corporal McCullough to the attention of the Spokane County Prosecutor's Office, you inappropriately circumvented your chain of command and the Internal Affairs process and harmed the reputation of members of the department.  While I do not find that you knowingly made these false allegations, I find that your actions and statements were reckless.

ECF No. 34-4 at 2–3.

Although Tofsrud's placement on the *Brady* list was based on the Letter of Reprimand, ECF No. 54-1 at 7–8, the Spokane County Prosecuting Attorney Larry Haskell and Chief Criminal Deputy Prosecutor Mark Cipolla, not the Defendants, were the decisionmakers with respect to whether Tofsrud was placed on the list. ECF No. 34-5 at 6.  Other courts have found that prosecutors are entitled to absolute prosecutorial immunity for such decisions.  *See Harris v. Chelan County*, No. 2:17-CV-0137-JTR, 2019 WL 1923924, at *4 (E.D. Wash. Apr. 30, 2019) (granting summary judgment against Plaintiff on substantive and procedural due process claims pertaining to *Brady* list designation because absolute immunity

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 19

applies to a prosecutor's decision to "*Brady* list" an officer); *Pendell v. Spokane*

*County*, No. 2:19-CV-00426-SAB, 2020 WL 3270150, at *3 (E.D. Wash. June 17,

2020) ("Defendants Driscoll and Haskell are entitled to absolute prosecutorial

immunity for the decision to place Deputy Pendell on the [Potential Impeachment

Disclosure List].").  Thus, to the extent that Tofsrud claims that he was labeled as a

"liar" by virtue of being placed on the *Brady* list, that designation was not made by

the named Defendants.

As the record does not support a conclusion that Tofsrud has been

"blacklisted" from engaging in his chosen profession of law enforcement by the

named Defendants, Tofsrud's substantive due process claim based on the right to

work in his chosen occupation fails.

### 2.    Entitlement to Terms & Conditions of Employment

Tofsrud also claims that he has "lost overtime work, lost training and

promotion opportunities, advancement, and disqualification from testifying in the

course of employment." ECF No. 14 at 20.

"Generally, the right to a particular position or to receive overtime hours is

not a constitutionally protected property interest."  *Heidt*, No. 3:15-CV-00989-SI,

2016 WL 7007501, at *10.  "Public employees have a 'property interest' in the

terms and conditions of their employment if that interest is established 'by existing

rules or understandings that stem from an independent source such as state law

rules or understandings that secure certain benefits and that support claims of

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 20

1    entitlement to those benefits.'" *Id.* (quoting *Bd. of Regents*, 408 U.S. at 577).  A

2    reasonable expectation of entitlement is derived from the wording of the

3    independent source of law, and the "extent to which the entitlement is couched in

4    mandatory terms." *Wedges/Ledges*, 24 F.3d at 62.

5    ***Overtime Work***

6           In the First Amended Complaint, Tofsrud claims that his entitlement to "fair

7    and equal access to overtime and promotional and training opportunities . . . arises

8    out of SPD's promises of specific treatment in specific circumstances including

9    disciplinary action implemented upon existence of just cause, made in City and

10   Department disciplinary policies, the *Brady* best practice policy and the collective

11   bargaining agreement." ECF No. 14 at 19.  However, Tofsrud concedes that his

12   claim and suit alleged violations of federal statutory rights, and "not rights under a

13   collective bargaining unit." ECF Nos. 33 at 4, 45 at 4.  Tofsrud has not alleged any

14   independent authority or pointed to evidence in the record that gives him the right

15   to work overtime hours or receive training, specifically leadership training where

16   Tofsrud had no formal leadership or command position.  ECF No. 34-1 (Tofsrud

17   describing his role within TCU as an "informal leadership role.").

18          "Although Plaintiff has a property interest in continued employment under

19   Washington law, *see* RCW 41.14.120, this provision does not give [Tofsrud] an

20   entitlement to future promotions or overtime, and is only "triggered by removal,

21   suspension, demotions, or discharge." *Pendell*, No. 2:19-CV-00426-SAB, 2020

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 21

WL 3270150, at *6.  Under RCW 41.14.120, "[n]o person in the classified civil

service . . . shall be removed, suspended, demoted, or discharged except for cause,"

and proscribes the procedures due when triggered.  *See Pendell*, No. 2:19-CV-

00426-SAB, 2020 WL 3270150, at *6 ("Placement on the PIDL does not amount

to removal, suspension, or demotion.").  Thus, Tofsrud cannot show that the statute

does anything more than create procedural guarantees, as opposed to creating a

reasonable expectation of opportunities for overtime work.  *See, e.g.*, *Stiesberg v.*

*State of Cal.*, 80 F.3d 353, 357 (9th Cir. 1996) (finding that officer's transfer from

one post to another, which had no adverse effect on his rank, pay, or privileges, did

not deprive plaintiff of a property interest protected by the Due Process Clause).

      In response to summary judgment, Tofsrud contends that he has "articulated

a substantive due process claim in alleging that he was demoted or transferred

arbitrarily."  ECF No. 40 at 14.  The facts, as alleged by Tofsrud, include that after

returning from medical leave, he was transferred to the North Precinct to a less

desirable office where his duties would include screening cases, distributing

stickers for the scat program, and conducting background investigations for

perspective senior volunteers at the precinct.  ECF No. 14 at 17; *see also* ECF No.

54-3 at 2 (examples of job functions for City of Spokane Detectives includes

"performs general police duties and other related work as required."); ECF No. 54-

7 at 3 (Major Eric Olsen testifying that Tofsrud was reassigned to the North

Precinct "for the productiveness of both [the TCU and PACT] units.").  Like the

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 22

plaintiff in *Stiesberg*, Tofsrud's transfer or reassignment to the North Precinct does not constitute a deprivation of a property interest protected by the Due Process Clause. *Stiesberg*, 80 F.3d at 357 ("[W]e reject the proposition that merely transferring an employee without notice gives rise to a due process claim.").

***Promotions & Training Opportunities***

Tofsrud alleges that he was being recruited for an opening in the Major Crimes Unit, and that recruitment ceased subsequent to the events at issue. ECF No. 3401 at 13. However, "the prospect of a promotion does not give rise to such an entitlement, and the fact that a person was not promoted is not grounds for a due process property claim." *Pendell*, No. 2:19-CV-00426-SAB, 2020 WL 3270150, at *5 (citing *Nunez v. City of Los Angeles*, 147 F.3d 867, 871-72 (9th Cir. 1998)). Furthermore, Tofsrud never formally applied for a position, and he has not directed the Court to an independent source of law which provides an entitlement to future promotions. *See id.* at *6 ("Although Plaintiff is correct that he has a property interest in continued employment under Washington law, *see* Wash. Rev. Code 41.14.120, he is incorrect that this provision gives him an entitlement to future promotions.").

/ /

/ /

/ /

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 23

1    *Ability to Testify*

2    Tofsrud contends that Defendants caused his disqualification from testifying

3    in the course of employment.  ECF No. 14 at 20 ("As a direct and proximate result

4    of the acts and omissions of Defendants complaint of herein, Plaintiff has suffered .

5    . . disqualification from testifying in the course of employment.").  However,

6    Tofsrud's inclusion on the *Brady* list is not a complete bar on his ability to testify

7    in court.  As set forth by Chief Deputy Prosecutor Cipolla, "just because a person

8    is on the list, doesn't mean [the Prosecutor's Office" just lay[s] down and die[s]."

9    ECF No. 34-5 at 4.  According to Chief Deputy Prosecutor Cipolla, there is no

10   "hard and fast rule" systematically excluding officers on the list from testifying.

11   *Id*.  For example, Corporal McCullough has testified in court since receiving his

12   *Brady* letter.  ECF No. 34-5 at 7.  Rather, from Chief Deputy Prosecutor Cipolla's

13   perspective, it depends on what the *Brady* issue is.  *Id*.

14   Tofsrud has failed to provide an independent source entitling him to

15   overtime work, training and promotion opportunities, and the ability to testify in

16   court.  Accordingly, Tofsrud cannot establish that he was deprived of a protected

17   property interest.

18   **3.    Liberty Interest**

19   Tofsrud did not expressly claim a liberty interest in his occupation.  *See* ECF

20   No. 14.  However, "the Due Process clause does recognize such an interest if a

21   public employer terminates an employee and, in doing so, makes a charge that

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 24

1  might seriously damage the employee's standing or impose a stigma on him that

2  prevents him from taking advantage of other employment in his chosen

3  profession." *Pendell*, No. 2:19-CV-00426-SAB, 2020 WL 3270150, at *6 (citing

4  *Blantz v. California Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs*.,

5  727 F.3d 917, 925 (9th Cir. 2013)).  Thus, the Court turns to whether Defendants'

6  "stigmatizing statements" in this context triggered the protections of due process.

7          "If, in the course of dismissing an employee, the government takes steps or

8  makes charges that so severely stigmatize the employee that she cannot avail

9  herself of other employment opportunities, a claim for deprivation of liberty will

10  stand." *Hyland v. Wonder*, 972 F.2d 1129, 1141 (9th Cir. 1992) (citing *Bd. of*

11  *Regents*, 408 U.S. at 573–574).  "Stigmatizing statements that merely cause

12  'reduced economic returns and diminished prestige, but not permanent exclusion

13  from, or protracted interruption of, gainful employment within the trade or

14  profession' do not constitute a deprivation of liberty." *Blantz*, 727 F.3d at 925

15  (quoting *Stretten v. Wadsworth Veterans Hosp*., 537 F.2d 361, 366 (9th Cir.1976)).

16          To satisfy the "stigma-plus" test, plaintiff must show that "the accuracy of

17  the charge is contested," that there is "some public disclosure of the charge," and

18  the charge "is made in connection with the termination of employment or the

19  alteration of some right or status recognized by state law." *Pendell*, No. 2:19-CV-

20  00426-SAB, 2020 WL 3270150, at *6 (quoting *Vanelli v. Reynolds Sch. Dist.*, 667

21  F.2d 773, 778 (9th Cir. 1982)).

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 25

The Court recognizes that "placement on a '*Brady* list' involves a negative credibility finding and can have severe employment consequences." *Heidt*, No. 3:15-CV-00989-SI, 2016 WL 7007501, at *11 ("Because Heidt remains employed, the Court dismisses with prejudice Heidt's claim that his liberty interest has been unconstitutionally deprived."). However, similar to the plaintiff in *Heidt*, Tofsrud "does not allege that he was terminated—his current claim involves only a change in job duties and an inability to receive overtime hours or training." *Heidt*, No. 3:15-CV-00989-SI, 2016 WL 7007501, at *11; *see also Pendell*, No. 2:19-CV-00426-SAB, 2020 WL 3270150, at *6–7 (declining to expand due process jurisprudence to cover all adverse employment decisions in the context of liberty interest claims, "given language and subsequent caselaw from the Ninth Circuit that is specific to employment termination.").

As discussed *supra*, Tofsrud has not demonstrated that he would, in fact, be deprived of all employment in his field by virtue of his placement on the *Brady* list. *See Pendell*, No. 2:19-CV-00426-SAB, 2020 WL 3270150, at *6. "If [Plaintiff] has shown any damage to his reputation, it has only deprived him of prestige and future possibilities of promotions and advancement." *Id*. "This is insufficient to make out a liberty interest claim and therefore Plaintiff is not entitled to the process he desires." *Id*.

Accordingly, Tofsrud's allegations fail to articulate the deprivation of a constitutionally protected liberty interest.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 26

Tofsrud has failed to support that a protected property or liberty interest is implicated in this case. *See Wedges/Ledges*, 24 F.3d at 62 ("A threshold requirement to a substantive or procedural due process claim is the plaintiff's showing of a liberty or property interest protected by the Constitution."). Accordingly, Defendants are entitled to summary judgment on Tofsrud's substantive and procedural due process claims under the Fourteenth Amendment.

### B. Equal Protection

"Plaintiff concedes several factual conditions . . . render[ ] his Equal Protection claim invalid." ECF No. 40 at 16. "Understanding the 'class of one' theory of equal protection is disfavored in the Ninth Circuit[,] Plaintiff wishes to focus the Court on his other claims and agrees to voluntarily dismiss his [Equal Protection] cause of action." ECF No. 40 at 15–16. Accordingly, Plaintiff's Equal Protection claim is dismissed with prejudice.

### III. Defamation

Defendants argue that they are entitled to summary judgment because "Plaintiff cannot identify anyone who communicated the allegedly defamatory statements to others." ECF No. 32 at 17.

The elements a plaintiff must establish in a defamation case are (1) falsity, (2) an unprivileged communication, (3) fault, and (5) damages. *Mohr v. Grant*, 153 Wash.2d 812, 822, 108 P.3d 768 (2005). The falsity prong is satisfied with

evidence that a statement is provably false or leaves a false impression.  *Id.* at 825, 108. P.3d 738.

When a defendant in a defamation action moves for summary judgment, the plaintiff has the burden of establishing a prima facie case on all four elements." *Paterson v. Little, Brown & Co.*, 502 F. Supp. 2d 1124, 1132 (W.D. Wash. 2007) (citing *LaMon v. Butler*, 112 Wash.2d 193, 197, 770 P.2d 1027 (1989)).  "The prima facie case must consist of specific, material facts, rather than conclusory statements, that would allow a jury to find that each element of defamation exists." *Paterson*, 502 F. Supp. 2d at 1132 (citing *LaMon*, 112 Wash.3d at 197, 770 P.2d 1027).

The basis for Tofsrud's defamation claim is a moving target.  In the First Amended Complaint, Tofsrud claims that "Defendants made statements in the form of the IA investigation, memos and reports, letters, emails, and public comments in which they labeled Plaintiff as untruthful."  ECF No. 14 at 25. However, Tofsrud fails to identify with particularity the statements, speakers, and recipients of the alleged defamatory statements.

When deposed and asked to state the basis for his defamation claim, Tofsrud testified that "the entire process defamed me.  So, I guess we've yet to identify who the entire process included, but the entire process defamed me . . . one of the worst things that you can have as a police officer is to be called a '*Brady* officer.' So that is defaming in my mind."  ECF No. 34-1 at 16; *see also* ECF No. 45 at 5

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 28

("Tofsrud considered the entire process to be based on false information that harmed his reputation."). This evidence fails to establish a prima facie case for defamation.

In response to summary judgment, Tofsrud contends that the Letter of Reprimand, finding that Tofsrud had violated SPD Policies including "knowingly making false, misleading, or malicious statements," which was forwarded to the Spokane County Prosecuting Attorney's Office, is false and actionable as defamation. ECF No. 40 at 17; *see also* ECF No. 34-4 at 3 (Chief Meidl stating that "[w]hile I do not find that you knowingly made these false allegations, I find that your actions and statements were reckless."). Defendants contend that if this the basis for Plaintiff's defamation claim, the communication between Chief Meidl and the Prosecutor's Office is privileged. ECF No. 53 at 11; *see Lackey v. Lewis County*, No. C09–5145RJB, 2009 WL 3294848, at *12 (W.D. Wash. Oct. 9, 2009) (finding defamation claim was subject to dismissal because the plaintiff failed to prove that Lewis County Prosecuting Attorney's communication to Mason County Prosecutor regarding officer's *Brady* designation was not privileged).

Furthermore, as there are only specific allegations asserted against Defendant Meidl, Defendants argue that Defendants Lundgren and Staben should be dismissed as a matter of law. The Court agrees that there are no specific allegations or evidence of defaming communications made by Defendants

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 29

Lundgren and Staben and dismisses Plaintiff's defamation claim against them with prejudice.

"A privileged communication involves the occasion where an otherwise slanderous statement is shared with a third person who has a common interest in the subject and is reasonably entitled to know the information." *Pate v. Tyee Motor Inn, Inc.*, 77 Wash.2d 819, 821, 467 P.2d 301 (1970). Most situations in which the common interest privilege applies involve persons from the same organization or enterprise. *Moe v. Wise*, 97 Wash.App. 950, 957, 989 P.2d 1148 (1999).

Here, it is undisputed that the Letter of Reprimand was shared with the Spokane County Prosecuting Attorney's Office. Pursuant to a memorandum entitled "Potential Impeachment Disclosure Guidelines," created on January 8, 2018, and shared with local law enforcement leadership, ECF No. 54-13 at 2, the Prosecutor's Office "relies on law enforcement agencies to conduct investigations into allegations of officer misconduct, and to advise [the Prosecutor's Office] of the results of those investigations." ECF No. 54-13 at 4. "On completion of the investigation, the agency is requested to notify the PID Deputy of all relevant information. This should be done whether or not the agency determined that the allegations were well founded." *Id.* at 5.

Once an internal affairs investigation commenced and concluded, Chief Meidl advised the Prosecutor's Office of the results of the investigation pursuant to

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 30

the Guidelines.  The Prosecutor's Office had a common interest in the information, based on the prosecutors' duties set forth in *Brady v. Maryland*, 373 U.S. 83 (1963).  Therefore, the Prosecutor's Office was reasonably entitled to the results of the underlying investigation.  Accordingly, the Letter of Reprimand authored by Chief Meidl falls within the common interest privilege.

If a qualified privilege applies, such has the common interest privilege, the burden then shifts to the plaintiff to show that the publisher abused the privilege. *Alpine Indus. Computers, Inc. v. Cowles Pub. Co.*, 114 Wash.App. 371, 382, 57 P.3d 1178 (2002).  "Whether the speaker has abused a qualified privilege such that the privilege is lost is ordinarily a question of fact for the jury unless the facts support only one reasonable conclusion."  *Little v. Kitsap Transit*, No. C08-5010RJB, 2008 WL 4621584, at *12 (W.D. Wash. Oct. 17, 2008) (citing *Moe*, 97 Wash.App. at 963, 989 P.2d 1148).

Defamation plaintiffs can demonstrate that a qualified privilege has been abused in one of five ways: (1) the speaker knew the statement to be false or acted in reckless disregard as to its falsity, (2) the speaker did not make the statement for the purpose of protecting the common interest, (3) the speaker knowingly published the matter to a person who is not covered by the privilege, (4) the speaker did not reasonably believe the subject matter was necessary to serve the common interest, or (5) the speaker published both privileged and unprivileged

1    statements.  *Moe*, 97 Wash.App. at 989, 989 P.2d 1148.  Evidence of abuse of the

2    privilege must be clear and convincing.  *Id.*

3        Tofsrud argues that Plaintiffs can show that Chief Meidl knew the falsity of

4    the statement "Detective Tofsrud made a knowingly false, misleading statement"

5    based upon contradictory statements in the Letter of Reprimand.  ECF No. 40 at

6    17.

7        The statement "Detective Tofsrud made a knowingly false, misleading

8    statement" does not appear verbatim in the Letter of Reprimand.  ECF No. 34-4 at

9    2–3.  Rather, the Letter states that after reviewing the matter, Chief Meidl found

10   Tofsrud to have violated SPD policies, including "knowingly making false,

11   misleading or malicious statements . . . ."  *Id.*  The Letter of Reprimand then states

12   "[w]hile I do not find that you knowingly made these false allegations, I find that

13   your actions and statements were reckless."  ECF No. 34-4 at 3.

14       The Court does not find that Chief Meidl's statement that Tofsrud's "actions

15   and statements were reckless" is a contradiction, but rather serves as clarification

16   as to the basis for sustaining the findings of SPD policy violations by the

17   Administrative Review Panel.  Furthermore, the finding regarding recklessness is

18   not clear and convincing evidence that Chief Meidl forwarded the Letter of

19   Reprimand with actual-malice knowledge as to the falsity of the Letter's contents.

20   *Tolan v. Washington*, No. C04-2091JLR, 2005 WL 1378755, at *3 (W.D. Wash.

21   June 8, 2005) ("A defendant abuses the official duty privilege if he publishes a

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 32

1  statement with actual malice-knowledge of the statement's falsity or reckless

2  disregard for its truth or falsity.") (citation omitted).  The record also does not

3  indicate that Chief Meidl forwarded the Letter of Reprimand for an unreasonable

4  purpose not encompassed by the common interest or that he knowingly published

5  the Letter to a person who was not part of the Spokane County Prosecuting

6  Attorney's Office.

7         Defendants asserted that "any written or oral statements made or otherwise

8  attributed to any or all of the named Defendants are protected by either a qualified

9  privilege or an absolute privilege."  ECF No. 15 at 23.  Tofsrud argued in response

10 to summary judgment that "Defendants have not articulated any basis under which

11 this communication would be privileged and therefore, Plaintiff has carried his

12 burden on this element."  ECF No. 40 at 18.  In replying, Defendants asserted the

13 common interest privilege presumably because Tofsrud had failed to identify with

14 sufficient particularity which statements formed the basis of his defamation claim

15 prior to his response to summary judgment.  Since Tofsrud failed to identify with

16 particularity which statements formed the basis of his defamation claim, and since

17 he already has argued that "the speaker knew the statement to be false or acted in

18 reckless disregard as to its falsity" and the Court has rejected that as a basis for

19 abuse of privilege, the Court finds that it is futile to allow Plaintiff to attempt to

20 rebut the privilege with a sur-reply.

21

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 33

## IV.    Outrage

Tofsrud claims that "Defendants' acts of investigating and labeling a law enforcement officer as a liar . . . consists of an extraordinary transgression of the bounds of socially tolerable conduct that is extreme and outrageous."  ECF No. 1 at 24.  Defendants contend that summary judgment is appropriate on Tofsrud's claim for outrage because the issuance of a Letter of Reprimand after a lengthy investigation does not amount to the requisite "extreme and outrageous conduct."  ECF No. 32 at 18–19.  Tofsrud argues that the facts, when considered in the context of a career in law enforcement, are sufficiently "shocking and outrageous."  ECF No. 40 at 20.

"The tort of outrage requires the proof of three elements: (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress."  *Kloepfel v. Bokor*, 149 Wash.2d 192, 195, 66 P.3d 630 (2003).  A claim for outrage must be predicated on behavior "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Grimsby v. Samson*, 85 Wash.2d 52, 59, 530 P.2d 291 (1975) (citing Restatement (Second) of Torts § 46 cmt. d).

Although "whether conduct is sufficiently outrageous is ordinarily a jury question," "the trial court must initially determine if reasonable minds could differ

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 34

on whether the conduct was extreme enough to result in liability." *Kirby v. City of Tacoma*, 124 Wash.App. 454, 473, 98 P.3d 827 (2004).

The Court finds that Defendants' actions were not so extreme as to shock the conscience. *See id.* at 473–74, 98 P.3d 827 ("Workplace disciplinary actions such as writing administrative reports, receiving oral reprimands, and internal affairs investigations are not 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'") (quoting *Grimsby*, 85 Wash.2d at 59, 530 P.2d 291). In *Kirby*, Division II of the Washington State Court of Appeals found that Kirby, a police officer, had failed to show that there was a genuine issue of material fact as to his claim of outrageous conduct where he alleged various adverse employment actions, including that he was the subject of numerous administrative investigations, "some of which lasted for months and some for up to two years." *Kirby*, 124 Wash.App. at 460–61, 474, 98 P.3d 827.

Thus, even in the context of a career in law enforcement, Tofsrud has failed to set forth specific facts showing that there is a genuine issue of material facts or evidence supporting his prima facie case with respect to his tort claim for outrage. Therefore, Plaintiff's claim of outrage is dismissed with prejudice.

Accordingly, **IT IS HEREBY ORDERED**:

1.    Defendants' Motion for Summary Judgment, **ECF No. 32**, is **GRANTED**.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 35

2.      Plaintiff's claims against Defendants are **DISMISSED WITH PREJUDICE**.

3.      Judgment shall be entered for Defendants.

4.      Any remaining, pending motions are **DENIED AS MOOT**, and any hearing dates are **STRICKEN**.

**IT IS HEREBY ORDERED**.  The District Court Clerk is directed to enter this Order, enter judgment as directed, provide copies to counsel, and **close the file in this case**.

**DATED** June 2, 2021.

_s/ Rosanna Malouf Peterson_
ROSANNA MALOUF PETERSON
United States District Judge